## CITY OF GOLD HILL, OR., et al. v. CALIFORNIA OREGON POWER CO.

Circuit Court of Appeals, Ninth Circuit.
October 21, 1929.

No. 5806.

Gus Newbury, of Medford, and John K. Kollock and McCamant & Thompson, all of Portland, Or., for appellants.

A. E. Reames, of Medford, Or., for appellee.

Before DIETRICH and WILBUR, Circuit Judges, and LOUDERBACK, District Judge.

DIETRICH, Circuit Judge. In the court below appellee and appellants were respectively plaintiff and defendants, and we shall so refer to them here. Plaintiff is a public service corporation engaged at many points in generating electric current for public use, and it and its predecessors in interest long have held title to certain lands on the easterly bank of the Rogue river near Gold Hill, Or. The defendant City of Gold Hill holds, and for a long period it and its predecessors in interest have held, title to lands opposite to this tract on the westerly bank of the river. Under the laws of the state a riparian owner takes title to the bed of the river, and admittedly here the common boundary line between the two tracts is the thread of the stream. Upon its tract the defendant city maintains, and from about the year 1882 it and its predecessors have maintained, a small hydroelectric plant by which a part of the water of the river is utilized for generating current for the use of itself and its inhabitants. In October, 1926, and prior to the commencement of this action, it entered into a contract with its codefendant, the Beaver Portland Cement Company, a large user of electric current, under the terms of which it leased its property to that company with an option to purchase. Being desirous of having the plant enlarged and of having constructed a dam across the river from bank to bank, it brought an action in the proper state court for the condemnation of such property rights belonging to plaintiff as would be required for the project, but for reasons presently immaterial it failed and the action was dismissed. Thereupon the cement company, changing its plans, commenced the construction of a wing dam mainly upon the site of an old wing dam which at an early date had been built by the city's predecessors in interest and was maintained by them up to 1900 when the larger part of it washed out. This dam extended from the westerly bank somewhat diagonally upstream to a point a few feet from the easterly bank where it terminated in a crib pier approximately 10 or 12 feet wide athwart the stream. The pier stood until 1927 when it was washed out. As to the length of this pier, in the general direction of the current, the testimony exhibits a wide diversity—all the way from 20 to 80 feet. Contending that the projected construction, which had actually been commenced, would constitute a trespass upon its property, plaintiff brought this suit to enjoin the defendants from proceeding therewith. There was a decree for plaintiff, and defendants appeal.

Primarily, the contention of appellants is that they have the right to reconstruct the old works, or, more accurately, to build upon the site of the old dam and pier a new

structure of substantially the same dimensions. This the plaintiff resists upon the ground, as alleged, that such easement as defendants' predecessors acquired easterly from the thread of the stream was lost through nonuser and abandonment. That this issue may be clearly defined perhaps it should be observed that apparently the defendants have certain rights to the use of waters of the river acquired under the rule of appropriation prevailing in Oregon and other western states, and that plaintiff has no such rights. The latter asserts its intention some time in the future, in some way, to use its property as a site for hydroelectric development, but in fact it has done nothing on the ground, nor has it formulated any specific plans. But in so far as concerns this particular issue, these considerations are immaterial. The fact that defendants have water rights confers upon them no authority to go upon the private property of another to construct works for their utilization. This they concede and contend only that they lawfully acquired and still possess the easement of which they seek to make use.

That their predecessors acquired such an easement and that they have succeeded to it, if it has not been lost by nonuser or abandonment, there is no question. This was definitively adjudicated in the United States District Court for Oregon in 1911 in a suit between the then owners of the two properties. In that case, as here, the owners of the westerly tract and power plant were entering upon the reconstruction of the old dam and apparently threatening to extend the work through to the easterly bank, and the owners of the easterly tract brought a suit to enjoin the proposed construction. The decree was to the effect that defendants had such an easement, but only such, as was necessary for the maintenance of the old dam, including the crib pier which was still standing, and enjoined construction beyond the limits thereof.

Hence we start with the uncontroverted proposition that defendants and their grantors in 1911 had such an easement as they now claim. The easement was acquired by prescription and not by grant, and, adverting to this consideration, the court below stated that, upon the question whether or not an easement so acquired may be lost by mere nonuser for the period of the statute of limitations, the decided cases are in conflict, but without deciding it held that here the nonuser was attended with acts and declarations of the owners affirmatively indicating an intention to abandon and assert no

further claim. Upon that ground alone the decree was predicated, and, if the finding is supported by the evidence, it is not seriously questioned that the decree should be affirmed.

It seems that for several years prior and subsequent to 1911 the defendant's properties were owned and operated by an Indiana corporation and that one Reed, residing at Gold Hill, was its local manager. After the decree in that year Reed urged upon his company various plans involving the utilization of the site of the washed-out dam, but he was unsuccessful in procuring the adoption of any of them, and finally about 1915 the intake that had been served by the dam was abandoned and a new intake was adopted about 900 feet further down the river. At that point, and by means of that intake, the water was always thereafter diverted for the operation of the defendants' plant. We are inclined to think that such change in the point of diversion, taken together with the declarations of Reed's superior officers as testified by him, and other circumstances in evidence, constitutes sufficient ground for the lower court's finding of abandonment in so far as it relates to that part of the dam that washed out in 1900. But we discover no sufficient ground for holding an abandonment of the crib pier or defendants' easement in the site thereof. The evidence is practically without conflict, to the effect that it was always of substantial, though not great, utility in diverting water to the westerly side of the river channel. While its efficiency for that purpose was small, the benefit to defendants flowing therefrom is not negligible, for, even with the contribution it made to the defendants' water supply, in certain seasons of the year the amount available at their intake was scarcely sufficient for their minimum power needs. It is therefore thought that in respect to the right of the defendants to rebuild a structure of similar dimensions upon this site the decree is erroneous.

In another particular we think the decree is uncertain and under a possible construction too broad. In the latter part of it is found this sentence: "They and each of them (the defendants) are forever enjoined from trespassing upon any of plaintiff's said property, *and* (italics ours) *from diverting or attempting to divert any of the waters of said stream from either said lots 1 and/or 2,*" lots 1 and 2 being plaintiff's riparian lands.

From the record as a whole we are inclined to think that the court intended to do

nothing more than to enjoin defendants from placing any structures on plaintiff's property for the purpose of diverting, and which would operate to divert, the waters flowing thereon. For example, an earlier declaration of the decree in the nature of a finding, is: "That the defendants had already (when the suit was commenced) built on plaintiff's said land at said point cement works of a permanent nature for the purpose of diverting the waters of said stream from plaintiff's said land." But we are advised that plaintiff is contending that the decree is to be construed as enjoining defendants not only from construction work upon plaintiff's lands but from doing anything which would, directly or indirectly, operate to diminish the volume of the water which would otherwise flow at that point on plaintiff's side of the river. In that view if, having the right by appropriation to divert water at some point up the stream for a beneficial purpose that would not admit of the return of the water to the stream above plaintiff's land, defendants should make such diversion, it would reduce the stream volume and hence would constitute a violation of the decree. There is elaborate discussion in the briefs of the question of the status in Oregon of the common-law rule of riparian rights, but we do not think the question properly arises in this case. While, in the light of the construction plaintiff puts upon this provision of the decree, some vague expressions may be found in the complaint suggesting such a question, the natural interpretation of the pleading is that plaintiff was complaining because, and only because, defendants were constructing works upon its lands and were intending by such means to divert the waters therefrom. And in the lower court's written opinion there is no reference, direct or indirect, to such a question. Whatever may be the rule in Oregon touching riparian rights, the pleading is inadequate, and the time is premature for a sweeping adjudication in respect to the relative rights of the parties under the doctrine of riparian rights. Apart from rights which may be acquired by appropriation in Oregon, and upon the assumption that the common-law rule prevails without qualification, defendants, as riparian owners, would have some rights of use which might turn out to be inconsistent with this part of the decree if given the literal and extreme interpretation put upon it by plaintiff. In view of the nature of the pleadings and the course of the trial, we are of the opinion that the decree herein should be without prejudice to an adjudication of the relative rights of the parties as riparian owners, or otherwise, to the use of the water of the stream, when and if, in the future, controversy shall arise in respect thereto.

Accordingly, the lower court will be directed to strike from the decree the sentence thereof first above quoted, and also to so modify such decree that it will recognize and protect the defendants' easement in the site of the old crib pier to the extent of the dimensions of such pier; and, further, to make it clear that the decree is without prejudice to such rights, if any, as either party may have under the principle of riparian rights or by appropriation. As so modified the decree will be affirmed.

It is not clear that the appellants could not have obtained in the lower court substantially the relief herein granted upon seasonable and appropriate application therefor, and hence they will be awarded only one-half their costs on appeal.